FILED
SUPERIOR COURT
OF GUAM

2018 FEB 14 PM 3: 43

CLERK OF COURT

By:

### IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| ALTON D. LEDOUX,<br><br>          Plaintiff,<br><br>vs.<br><br>DIANA R. MUNA,<br><br>          Defendant. | **Superior Court Case No. CV0981-15**<br><br>**DECISION AND ORDER**<br>**re**<br>**MOTION FOR RECONSIDERATION** |

Plaintiff Alton D. Ledoux asks the Court to reconsider its November 21, 2017 Findings of Fact and Conclusions of Law re Amounts Owed ("FFCL"). Having evaluated the parties' arguments, the Court DENIES in part and GRANTS in part the Motion. Since further action in this case requires the assistance of a person skilled in accounting calculations, the Court notifies the parties of its intent to appoint a Master, as further discussed below.

### I. PROCEDURAL BACKGROUND

The Court's task in the FFCL was to calculate what amount, if any, remained owed between the parties after 15 years of staggered, inconsistent payments made under an Agreement of Sale. The parties asked the Court to undertake this endeavor after failing to carry out their mediated agreement to hire a UOG professor to perform these calculations and an accounting. FFCL ¶ 11 (Nov. 21, 2017); Mediator's Statement (Mar. 13, 2017). The FFCL concluded that Ledoux owed Muna $13,694.51 as of November 4, 2016, with contractual interest continuing to accrue until the date of Judgment. FFCL at 11. The Court also concluded Ledoux owed

$1,300.00 in late fees as of November 2017. FFCL at 11. The Court issued its decision after giving the parties two opportunities to submit all necessary evidence supporting their respective accounting. In fact, the Court's August 18, 2017 Order for Further Briefing informed the parties of the Court's difficulty in rendering a decision with the limited record before it. The Court therefore allowed a second round of briefing to provide additional documentation substantiating the parties' respective calculations as well as to address the discrepancies between the parties' spreadsheets. Upon receiving the parties' submissions, the Court painstakingly pored over 15 years worth of checks, check stubs, receipts and the parties' separate, conflicting spreadsheets, to render its findings. The Court provided in detail which payments were made, which payments were not authenticated, and which payments incurred late fees. As the parties are also aware, the Court obtained the assistance of finance personnel within the Judiciary who formulated the Court's spreadsheet in regards to interest, attached to the FFCL.

In his Motion for Reconsideration, Ledoux challenges the Court's calculations, and claims the Court failed to take into account certain payments, included improper late fees, compounded interest, assessed interest on the loan balance rather than the principal balance, and erred in not awarding attorney's fees.

## II.    LAW AND DISCUSSION

### A. Standard for Motion for Reconsideration

A court may reconsider a prior order

> Only on the grounds of (1) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (2) the emergence of new material facts or a change of law occurring after the time of such decision, or, (3) a manifest showing of a failure to consider material facts presented to the Court before such decision.

CVR 7.1(i). The Supreme Court of Guam further instructs that reconsideration may be granted where the trial court "(1) is presented with new evidence; (2) committed clear error or the decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Ward v. Reyes*, 1998 Guam 1 ¶ 10. Further, the purpose of a motion for reconsideration is not to re-argue the motion already decided, but to "allow the losing party to make a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." *State v. Fitzsimmons*, 668 A.2d 453, 456 (N.J. Super. 1995).

### B. Two Uncredited Payments

Ledoux asks to be credited for two payments. First, Ledoux presents Check #161, which he claims he paid on November 11, 2005. Ledoux failed to include a copy of this check in either his first submission or his voluminous second submission. This information should have and could have been presented earlier. Ledoux does not demonstrate that he was unaware of such evidence despite an exercise of reasonable diligence, thus, the information is simply late. Reconsideration is not an opportunity to provide additional evidence that could have been provided earlier. Therefore, the Court will not reconsider its FFCL to include Check #161 in its calculations.

Ledoux's Motion for Reconsideration also discusses Check #3120, which he claims he tendered on June 1, 2007. However, Muna credited this same check number for July 2004 and Ledoux's submitted photocopy shows he also tendered it in July 2004. Since the Court has already considered this evidence and credited it to Ledoux, the Court need not reconsider it. Therefore, reconsideration as to the two additional checks is **DENIED**.

### C. Late Fees

Ledoux claims that because Muna refused to accept his checks starting May 2015, no late fee should be applied from May 2015 onwards. Ledoux's assertion is not completely accurate. Two checks were made in 2015: March (#202) and December (#167). Since Ledoux made multiple payments prior to March 2015, the March 2015 payment was applied to November 2015. The December 2015 payment was thus considered the only late payment in 2015. Additionally, two more checks were accepted the following year in 2016: October (#318) and November (#319). Therefore, the last payment was actually made in 2016.

Moreover, Ledoux did not raise this specific concern in the earlier rounds of briefing. Although Ledoux's spreadsheet did not list a late fee for periods following May 2015, there is no explanation why.[1] If he had, Muna would have had an opportunity to respond to this particular point.

Nonetheless, the Court has reviewed the parties' spreadsheets to determine whether Muna accounts for late fees after May 2015. In her spreadsheet, despite non-payment, Muna did not assess a late fee from May 2015 through August 2016 or from October 2017 through October 2018. Since Muna appears to concede that payments during these periods do not incur a late fee, the Court finds it unjust to assess a late fee on Ledoux when Muna fails to assess one. Thus, the Court reconsiders its calculation and will not include late fees for the following months:

| Year | Months Where Muna Assessed No Late Fee but the FFCL Did |
|---|---|
| 2015[2] | December [1 month] |
| 2016[3] | January, February, March, April, May, June, July, August [8 months] |

---

[1] In reviewing the record, the Court now notes that Ledoux's Complaint alleges that Muna did not accept checks after May 2015. However, again, Ledoux did not raise this issue in either of his two briefings.

[2] The FFCL assessed a late fee only for December. Therefore, even though Muna does not assess late fees for the entire year of 2015, the Court reconsiders only as to December.

[3] The FFCL's assessed late fees for the following months still stands: September, October and December.

| 2017[4] | October, November [2 months] |
|---------|------------------------------|

The Court finds that it had granted late fees for eleven months when Muna did not assess a late fee. These eleven months amount to $275.00 in late fees. Therefore, the Court **GRANTS** reconsideration of this issue and determines that as of November 2017, the total amount Ledoux owes in late fees is $1,025.00, instead of $1,300.00.

### D. Interest on Principal

Ledoux seeks reconsideration on the basis that the Court calculated interest on the unpaid balance, whereas the Agreement calls for interest on unpaid principal. The Court agrees with this argument, as the Agreement specifically requires "interest on the declining principal balance." V. Compl., Ex. A § 1.4 (Oct. 29, 2015). The FFCL erred in including interest within a single month's balance and then assessing interest on that balance for the following month.

The Court **GRANTS** this portion of Ledoux's Motion for Reconsideration and will permit a revised calculation that assesses interest on the remaining principal only. As the Court advised the parties at the January 10, 2018 hearing, this will require the Court to appoint a Master with knowledge in making the necessary calculations. The Court discusses this process at the end of this Decision & Order.

### E. Simple Interest

Ledoux complains that the Court compounded interest. The Court disagrees. Nonetheless, the revised calculation performed by the Master will recalculate interest.

### F. Attorneys Fees

---

[4] To be consistent with the timeframes considered in the FFCL, the Court looks at late fees assessed up to November 2017.

The Court's FFCL determined that "as Ledoux has not prevailed in this matter, he is not entitled to attorney's fees." FFCL at 11. In reviewing the parties' briefs, the Court notes that the parties did not request that the Court make a determination as to whether or not Ledoux, or Muna, was entitled to an award of attorney's fees. For example, the parties' submissions for calculating the amounts owed did not contain any discussion on attorney's fees, including what amount, if any, either party owed.

Since the issue of attorney's fees was never briefed to the Court and never raised for the Court to determine, the Court reconsiders its determination that Ledoux has not prevailed is this matter and is not entitled to attorney's fees. Thus, the Court makes no determination at this time as to whether or not Ledoux or Muna is a prevailing party.

## III.  CONCLUSION

The Court **DENIES** Ledoux's Motion for Reconsideration on Check #161 and Check #3120. The Court **GRANTS** Ledoux's Motion for Reconsideration on the issue of the calculation of interest, late fees, and attorney's fees. By the granting of the Motion, the issue of simple interest is also resolved and will be recalculated.

## IV.  INTENTION TO APPOINT A MASTER

Pursuant to Guam Rule of Civil Procedure 53, the Court gives notice of its intent to appoint a Master to perform calculations of interest based on the Court's findings of fact. A Master may "perform an accounting or resolve a difficult computation of damages." Guam Rule of Civil Procedure (GRCP) 53(a)(1)(B)(ii). The Court finds that a Master will possess the requisite skill to perform the needed calculations, which the Court has been unable to do.

Within 21 days of this Decision and Order, the parties may: (1) submit names of three candidates (along with their contact information and professional or educational background, if

known) for the Court's consideration; (2) file objections, if any, to the Court's intention to appoint a Master; and (3) advise the Court as to a recommended budget for the Master's services, and whether the party proposes an allocation of costs other than split evenly among Muna and Ledoux (*see* GRCP 53(h)(3)). Seven days after the 21-day deadline, the parties may file objections to Master candidates nominated by the other party.

Thereafter, the Court will contact the Master candidates to determine availability, qualifications, ability to complete the task without undue delay, cost, and potential conflicts (GRCP 53(a)(2)). Once a Master is selected, the Court will issue an Order Appointing Master. The Court also reminds the parties that the appointment of a Master is not an opportunity to rehash which payments have been made or missed. The Master will only calculate interest as to the payments deemed to have been made in the FFCL, and the remaining balance.

SO ORDERED this 14th day of February 2018.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:

Date: 7/14/18    Time: 4pm
Jerimie K.C. James
Deputy Clerk, Superior Court of Guam